1

2

3

Hon. Richard A. Jones

4

5

6

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

SEATTLE SPERM BANK, LLC, a
Washington limited liability company,

CASE NO.  2:17-cv-01487-RAJ

9

Plaintiff,

PLAINTIFF'S OPPOSITION TO MOTION
TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER VENUE

10

v.

11

CRYOBANK AMERICA, LLC, a Texas
limited liability company; MICHAEL
BLAINE, a Texas resident; SANJAY
KUMAR, a Texas resident,

**Noted on Motion Calendar:
December 29, 2017**

12

13

Defendants.

14

15

16

17

18

19

20

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  FACTS .................................................................................................................2

III. ARGUMENT & AUTHORITY ............................................................................4

    A.   Plaintiff's Complaint Meets the 12(b)(6) Pleading Standard. .................4

        1.   *A Rule 12(b)(6) Motion is not a Vehicle for Contesting Facts.* ...................4

        2.   *SSB's Claims Meet the Pleading Standard of Rule 8.* ................................5

            *a.  SSB Took Reasonable Measures to Protect Its SOPs* ............................5

            *b.  Common Law Unfair Competition* ..............................................7

    B.   Personal and Subject Matter Jurisdiction are Appropriate in this District Court. .................................................................................................8

        1.   *Specific Personal Jurisdiction Exists* ..........................................................8

            *a. Defendants Purposefully Directed Their Actions at the Forum State....*9

                *i.   Defendants Intentionally Misappropriated SSB's Seattle-based Trade Secrets* ................................................10

                *ii.  Defendants' Argument That SSB Has Experienced No Harm is Misplaced* ......................................................13

            *b.  SSB's Claims Arise from Defendants' Misappropriation in Washington* ............................................................16

            *c.  The Court's Exercise of Jurisdiction is Reasonable* ......................16

        2.   *The Amount in Controversy for Diversity Jurisdiction has been Met.* .................................................................................................17

    C.   Venue is Appropriate. ...........................................................................18

IV.  CONCLUSION ..................................................................................................19

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - i
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

**Cases**

*Ashcraft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 1

*Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*, 157 F.Supp. 3d 929 (W.D. Wash. 2015)............. 19

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995)................................................... 9, 16

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082 (9th Cir. 2000) ...................... 8, 9

*Buffets, Inc. v. Klinke*, 73 F.3d 965 (9th Cir. 1996) ............................................... 6

*Calder v. Jones*, 465 U.S. 783 (1984)................................................................. 10

*Center for Bio. Div. v. Lubchenco*, 2009 WL 4545169 (N.D. Cal. 2009) .................................. 18

*Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) ....................................................... 17

*Decker Coal Co. v. Commonwealth Edison Co.*, 85 F.2d 824 (9th Cir. 1986)........................ 2, 18

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir.2002)............................................. 10

*Easter v. American West Financial*, 381 F.3d 948 (9th Cir. 2004) .................................... 9

*Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 971 P.2d 936 (1999)...................... 1, 6, 14

*Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wn. App. 242, 274 P.3d 375 (2012) ........ 8

*Foss v. Culbertson*, 17 Wn.2d 610, 136 P.2d 711 (1943)......................................... 7

*Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir 2002).................................... 5

*Johnson v. Riverside Healthcare Sys., L.P.*, 534 F.3d 1116 (9th Cir. 2008) ................................. 4

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000)......................................... 18

*Kieburtz & Assocs., Inc. v. Rehn*, 68 Wn. App. 260, 842 P.2d 985 (1992) ................................. 8

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 1998).................................................. 4

*Lax v. Toyota Motor Corp.*, 65 F.Supp. 3d 772 (N.D. Cal. 2014) .............................. 19

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001)......................................... 4, 5

*Lou v. Belzberg*, 834 F.2d 730 (9th Cir. 1987) ................................................ 18

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010)......................... 8, 9

*Machen Inv. v. Aircraft Design, Inc.*, 65 Wn. App. 319, 828 P.2d 73 (1992) ......................... 6, 7

*Marder v. Lopez*, 450 F.3d 445 (9th Cir. 2006)................................................. 4

*Microsoft Corp. v. Mountain West Comp., Inc.*, 2015 WL 4479490 (W.D. Wash. Jul. 22, 2015) ........................................................................ passim

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - ii
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Moon v. Phipps*, 67 Wn.2d 948, 841 P.2d 794 (1966) ..................................................... 8

*Naffe v. Frey*, 789 F.3d 1030 (9th Cir. 2015) ............................................................... 18

*Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ................................ 16

*Polich v. Burlington N., Inc.*, 942 F.2d 1467 (9th Cir. 1991) ........................................ 4

*Retail Prop. Trust v. United Blvd. of Carp. & Joinders of Am*, 768 F.3d 938 (9th Cir. 2014) ............................................................................................................................ 4

*Robbins Co. v. JCM Northlink LLC*, 2016 WL 4193864 (W.D. Wash. Aug. 9, 2016) ............... 14

*Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174 (7th Cir. 1991) ........................... 7

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ................................................... 14

*Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913 (D. Nev. 2006)..................................... 14

*Seneca Co.'s, Inc. v.* Becker, 134 F.Supp. 3d 1148 (S.D. Iowa 2015) ........................... 19

*Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990) ...................................... 16

*Smith v. Reg'l Transit Auth.*, 736 F.3d 340 (9th Cir. 2014)........................................... 4

*T-Mobile USA, Inc. v. Huawei USA, Inc.*, 115 F. Supp. 3d 1184 (W.D. Wash. 2015).......... passim

*Ultimate Timing, LLC v. Simms,* 715 F.Supp.2d 1195 (W.D. Wash. 2010) ................................ 7

*Unicru, Inc. v. Brenner*, No. Civ. 04–248–MO, 2004 WL 785276 (D. Or. Apr. 13, 2004)......... 16

*Union Pacific R.R. Co. v. Mower*, 219 F.3d 1069 (9th Cir 2000) ................................ 14

*United States v. 14.02 Acres of Land*, 547 F.3d 943 (9th Cir. 2008)................................ 4

*Washington Shoe Co. v. A–Z Sporting Goods Inc.,* 704 F.3d 668 (9th Cir. 2012) ...................... 9

*Waterjet Tech., Inc. v. Flow Intern. Corp.*, 140 Wn.2d 313 (2000) .............................. 7

*Winston Rs. Corp. v. Minn. Min. & Mfg. Co.*, 350 F.2d 134 (9th Cir. 1965) ............................ 14

**Statutes**

21 C.F.R. § 1271.1(a).......................................................................................................... 2

28 U.S.C. § 1331................................................................................................................. 8

28 U.S.C. § 1332................................................................................................................. 8, 17

28 U.S.C. § 1404................................................................................................................. 18

28 U.S.C. § 1836................................................................................................................. 8

**Rules**

Fed. R. Civ. P. 12 ............................................................................................................... 5

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

# I.   INTRODUCTION

In an effort to get a jump-start on their own competing business – Cryobank America, LLC – individual Defendants Kumar and Blaine (the "Individual Defendants"), while employees of Plaintiff Seattle Sperm Bank, LLC ("SSB"), misappropriated what amounts to SSB's "playbook", among other things.  SSB's complaint outlines the Defendants' scheme in detail, as well as the value of SSB's at-issue trade secrets, the effort and investment to develop the trade secrets, the steps to keep the trade secrets confidential and the harm caused by Defendants' actions.  The complaint goes well beyond the minimum pleading requirements for each of the asserted causes of action, and satisfies the requirements for personal and subject matter jurisdiction.

Defendants' motion to dismiss ("Motion" (Dkt. No. 21)) ignores the majority of the complaint's allegations.  Rather, Defendants mainly rely on matters outside the complaint or on unsupported argument, guised as "fact," to overcome SSB's well-pleaded complaint.  Such extrinsic, beyond-the-complaint "facts" not only are improper on this Rule 12 motion to dismiss, they also would fall far short of the "undisputed" requirement of Rule 56, had Defendants instead filed a motion for summary judgment.

In addition to their procedurally improper attempt to assert (disputed) facts, and arguments based on disputed facts, on this Rule 12 motion, Defendants misinterpret and misapply the law. First, "whether specific information is a trade secret," including whether Plaintiff has taken "reasonable" secrecy measures, is a question of fact to be addressed at trial.  *See Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 436, 971 P.2d 936 (1999).  Second, the purpose of a motion to dismiss is to determine whether the plaintiff has sufficiently and fairly stated a plausible claim in order to "unlock the doors of discovery."  *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009).  Having pleaded detailed allegations about Defendants' scheme - identifying specific trade secrets stolen and the particular methods of theft - without the benefit of full discovery, SSB is entitled to discovery regarding the scope and extent of Defendants' wrongdoing.  It is for similar reasons that SSB's common law cause of action for unfair competition has merit.  Third, Defendants fail to

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 1
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

bring to the Court's attention two decisions from this District which hold that accepting specific personal jurisdiction over matters such as this case is appropriate.  *See Microsoft Corp. v. Mountain West Comp., Inc.*, No. C14–1772RSM, 2015 WL 4479490, at * 7 (W.D. Wash. Jul. 22, 2015) (accessing servers of Washington corporation confers specific jurisdiction over foreign defendants); *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1202-03 (W.D. Wash. 2015).

    <u>Finally</u>, Defendants have failed to make the "strong showing" required to transfer this case. *See Decker Coal Co. v. Commonwealth Edison Co.*, 85 F.2d 824, 843 (9th Cir. 1986).  SSB is based in Seattle, Washington.  It was injured here in Seattle when its former employees embarked on a path to steal SSB's trade secrets and then, after leaving SSB, compete against their former employer.  Transfer is not appropriate.

## II.      FACTS

    SSB is a Seattle-based sperm donor business founded in 2008.  Compl. (Dkt. No. 1) at ¶ 8. Because it operates in the transfer of human tissue materials, it is highly regulated under federal law.  *See id.*, ¶ 9.  The U.S. Food and Drug Administration regulates SSB's business through the regulations found at 21 C.F.R. Part 1271, titled Human Cells, Tissues and Cellular and Tissue Based Products.  *Id.*[1]

    Because it is federally regulated, SSB, pursuant to federal law, must have a set of standard operating procedures and related forms (SOPs), which are used to operate its business.  *See* Compl., ¶ 9.  Over 50 unique SOPs are required with over 100 regulated and controlled forms.  *See id.*  Because SSB is a leader in its field, SSB's SOPs consist of over 1000 pages of material.  *See id.*  Having a set of SOPs compliant with Part 1271 is a predicate to registration with the U.S. Food and Drug Administration, and therefore also is a predicate to opening for commercial activity.  *See*

---

[1] The scope of these regulations is broad – requiring businesses such as SSB to register and "to comply" with all the requirements of Part 1271.  *See* 21 C.F.R. § 1271.1(a).  Part 1271 has six Subparts with over 49 specific sections with which SSB must comply.  *See generally* 21 C.F.R. Part 1271.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*id.*, ¶ 10.  Therefore, SSB incurred significant costs in preparing its market-leading SOPs, in an amount vastly greater than $75,000.  *See id.*, ¶¶ 4, 5, 8, 9, 10.  This lawsuit involves the Individual Defendants' scheme and conspiracy, while employed by SSB, to steal SSB's SOPs in order to develop a competing business.

The Individual Defendants, within the first four months of their employment by SSB, began their scheme and conspiracy to compete.  The complaint details such activity by identifying the registration of a competing web domain name, the opening of a competing business in Texas and the purchase of materials necessary to compete under false pretenses.  *See id.*, ¶ 16(a)-(c).  Even more importantly, the Individual Defendants were constantly misappropriating SSB's trade secrets during this time.  For a period of at least six months during their employment with SSB, the Individual Defendants misappropriated electronically stored materials, particularly SSB's SOPs, in order to compete against their employer.  A computer forensics expert tracked down this wrongful conduct to a thumb drive, among other locations, used by the Individual Defendants.  *See id.*, ¶ 20.  Importantly, all of these materials were housed on SSB's Seattle servers, which the Individual Defendants knowingly accessed from afar in order to steal the information necessary to compete against their employer.  *See id.*, ¶ 21.

The desire to harm SSB and acknowledgment that harm would occur is clear when one considers the Individual Defendants' concealment of the true reasons for their departure from SSB. Defendant Blaine claimed he was resigning <u>solely</u> because of his wife's medical residency in Texas, and did not intend to work until becoming "acclimated" to his new location.  *See* Compl., ¶ 17.  Defendant Kumar claimed he received an offer as a "manager" at a biotechnology company. *See id.*, ¶ 18.  In truth, the Individual Defendants, after months of misappropriation and preparation to compete while being paid by SSB, left SSB to compete against SSB *with SSB's own trade secrets*.  Cryobank America, LLC opened for business on September 7, 2017.[2]  It is SSB's

---

[2] *See* https://cryobankamerica.com/ (recent updates section of webpage).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 3
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

contention that but-for the theft of SSB's trade secrets and related wrongful competition, the Defendants would not and could not have opened for business in such a short period of time and are benefiting from the use of SSB's trade secret SOPs.  In essence, SSB's hard work in preparing its own SOPs gave Cryobank a jumpstart to compete.  *See id.*, ¶¶ 19, 21, 30, 40, 43.

## III.    ARGUMENT & AUTHORITY

### A.    Plaintiff's Complaint Meets the 12(b)(6) Pleading Standard.

1.    *A Rule 12(b)(6) Motion is not a Vehicle for Contesting Facts.*

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The statement "need only give the defendant[s] fair notice of what … the claim is and the grounds upon which it rests." *Johnson v. Riverside Healthcare Sys.*, L.P., 534 F.3d 1116, 1122 (9th Cir. 2008) (citation omitted). A 12(b)(6) motion is not an occasion for the defendant to contest allegations.  Rather, a court "accept[s] as true all factual allegations in the complaint and draw[s] all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Blvd. of Carp. & Joinders of Am*, 768 F.3d 938, 945 (9th Cir. 2014); *see also Smith v. Reg'l Transit Auth.*, 736 F.3d 340, 347 (9th Cir. 2014) ("Disputed questions of fact are anathema to Rule 12(b)(6) jurisprudence.").  Finally, and most importantly, the "scope of review … is limited to the contents of the complaint." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *United States v. 14.02 Acres of Land*, 547 F.3d 943 (9th Cir. 2008).[3]  Absent unusual circumstances, "[d]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 19991).

---

[3] Two limited exceptions, which are inapplicable to this matter, exist.  First, courts may take judicial notice of undisputed matters of public record.  *See Lee v. City of Los Angeles*, 230 F.3d 668, 690 (9th Cir. 2001).  Second, documents referenced but unattached to the complaint may be reviewed.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 1998) (superseded by statute on other grounds).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Defendants, notwithstanding this clear law, intersperse their moving papers with arguments based on alleged facts and evidence extrinsic to the complaint. *See, e.g.*, Motion at ¶¶ 7, 8, 9, 15 and 51; Blaine Decl. (Dkt. No. 22) at ¶¶ 2, 5 and 7, and attached Exhibit A (Dkt. No 22-1). These matters should be disregarded by the Court in evaluating Defendants' motion.[4]

2.    *SSB's Claims Meet the Pleading Standard of Rule 8.*

a.    *SSB Took Reasonable Measures to Protect Its SOPs*

Defendants seek to attack SSB's trade secret claims for the sole reason that it did not take reasonable measures to keep its trade secrets confidential.[5] *See* Motion at ¶¶ 50-53, 56. If the complaint, however, is read fairly, it is obvious that SSB adequately pleaded the measures taken to protect its trade secrets. First, the complaint states (and Defendants do not deny) that the individual defendants were required to sign (and did sign) an employee handbook that highlights the need to keep confidential, among other things, the following information:

> Such confidential and proprietary information includes, but is not limited to, the Company's trade secrets, method of conducting or obtaining business, business or operating plans, finances and financial information, …, technical know-how…, or any other information or confidences relating to the Company….

> You may not disclose this information or use this confidential information to further your personal interest or that of any person or entity other than the Company….

---

[4] To the extent the Court wishes to convert this motion to one for summary judgment, Rule 12 requires that SSB be provided a "reasonable opportunity to present all material made pertinent to such a motion…." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir 2002); Fed. R. Civ. P. 12(b)(6). Because SSB is responding to a Rule 12 motion, SSB has <u>not</u> presented significant evidence to support its claim that its SOPs were misappropriated and used, the time and energy incurred to create its SOPs, and the value of SSB's SOPs to its own business and Defendants' business. Yet, each of these facts may plausibly be inferred from the allegations of the complaint.

[5] Defendants do not dispute, and indeed admit, that the Defendants misappropriated SSB's SOPs and forms by copying them to a removable thumb drive. Motion at 18, ¶ 51 ("[Defendants] did not spirit out the files, but simply put them on a flash drive and walked out with them."). Further, Defendants stipulated to as much in the parties' Stipulated Preliminary Injunction. *See* Preliminary Inj. Order (Dkt. No. 18) at ¶ 6.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE - 5 (CASE NO. 2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Compl., ¶¶ 11, 13. SSB's SOPs and related forms are at the heart of how SSB conducts its

business. Indeed, as the complaint details, without the SOPs, SSB could not operate in its industry.

*See id.*, ¶¶ 9-10 (detailing federal registration procedures required of SSB and how SSB's SOPs

meet and exceed such requirements). In addition to having the Individual Defendants

acknowledge the secrecy of SSB's SOPs, additional access rights to the SSB network were

provided to Defendants Kumar and Blaine by virtue of their important roles at SSB. This too is

detailed in the complaint and the reasonable inference therefrom is that such rights were granted to

only a select few employees (not all employees) of SSB. *See id.*, ¶ 14(a-c).

Defendants' only argument against the reasonable precautions taken by SSB to keep its

SOPs secret (as described above) is that the handbook they signed did not meet the requirements of

a binding contract. *See* Motion at 19, ¶¶ 52-53, 56. This argument amounts to nothing more than

a red herring – SSB is not asserting a breach of contract claim against the Defendants, but instead

alleges that Defendants Kumar and Blaine were required to sign the handbook as a reasonable

effort for keeping its SOPs (i.e., its business operating procedures) secret.

Further, Defendants' argument fails to acknowledge the low threshold of proof necessary to

meet the reasonable secrecy effort requirement:

> Reasonable efforts to maintain secrecy have been held to include
> advising employees of the existence of a trade secret, limited
> access to a trade secret on a need to know basis, and controlling …
> access.

*See Buffets, Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996) (quoting *Machen Inv. v. Aircraft*

*Design, Inc.*, 65 Wn. App. 319, 828 P.2d 73, 78 (1992)). Although the determination of whether

material meets the definition of a trade secret is appropriately left to trial or the summary judgment

stage (*see Ed Nowogroski Ins.*, 137 Wn.2d at 436), the allegations of SSB's complaint – that

access to its SOPs was limited to certain individuals and that those individuals promised by signing

the handbook to keep those SOPs confidential – more than meet the pleading standard at the

12(b)(6) stage. Indeed, "only in an extreme case can what is a 'reasonable' precaution be

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 6
(CASE NO. 2:17-cv-01487-RAJ)

determined [even] on a motion for summary judgment, because the answer depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor involved." *See Ultimate Timing, LLC v. Simms*, 715 F.Supp.2d 1195, 1206 (W.D. Wash. 2010) (quoting *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 179 (7th Cir. 1991)).  The Defendants engaged in "flagrant industrial espionage" and the "courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets" in such circumstances. *See Machen*, 65 Wn. App. at 78, (*overruled on other grounds by Waterjet Tech., Inc. v. Flow Intern. Corp.*, 140 Wn.2d 313 (2000)).[6]

SSB's complaint alleges that SSB took reasonable steps to maintain the secrecy of its SOPs by limiting access to the SOPs to certain SSB employees and requiring employees to promise to safeguard and keep confidential proprietary company information and materials, including the SOPs.  This is more than sufficient to meet the pleading requirements of Rule 8(a).  And, as this case moves forward, SSB will certainly provide more detailed accounts of the efforts it has taken and continues to take to keep secret its SOPs from public disclosure.

> b.     *Common Law Unfair Competition.*

The Defendants argue that they are unaware of the basis for SSB's unfair competition claim. *See* Motion at ¶ 57.  "[N]o inflexible rule or set of rules can be laid down as to just what conduct will constitute unfair competition." *See Foss v. Culbertson*, 17 Wn.2d 610, 623, 136 P.2d 711 (1943).  The Restatement (Third) of Unfair Competition defines the cause of action as follows:

> One who causes harm to the commercial relations of another by
> engaging in a business or trade is not subject to liability … unless:
> (a) the harm results from acts or practices of the actor actionable …
> under the rules of this Restatement relating to:
> …

---

[6] It is for this reason that the bevy of rhetorical questions posed by Defendants with respect to what hypothetical measures SSB could have taken are irrelevant to whether SSB took reasonable precautions, particularly on a motion to dismiss. *See* Motion at 7, ¶ 13.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 7
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

> (3) appropriation of intangible trade values including trade secrets;
> or from other acts or practices of the actor determined to be actionable
> as an unfair method of competition….

Restatement (Third) of Unfair Competition § 1.  The Individual Defendants[7] accepted salary from

SSB while, for nearly nine months, conspiring to compete and misappropriating SSB's trade secret

and related information.  The complaint clearly and succinctly pleaded these facts.  The claim

meets the pleading requirements of Rule 8.

**B.      Personal and Subject Matter Jurisdiction are Appropriate in this District Court.**

Defendants knowingly accepted employment with a Seattle-based company.  Through a

computer forensic examination, SSB uncovered that Defendants knowingly accessed SSB's

computer servers to steal SSB's trade secrets, which trade secrets sit at the very heart of the

operation of Plaintiff's business.  *See* Compl., ¶¶ 5, 6, 16-18, 20.  <u>None of these facts are disputed

by Defendants through affidavit</u>.  Defendants nonetheless dispute that specific personal jurisdiction

exists over them in this District.  They further dispute that the amount in controversy requirement[8]

to meet the test for diversity jurisdiction under 28 U.S.C. § 1332 has been met.

1.      *Specific Personal Jurisdiction Exists.[9]*

Where, as here, a motion to dismiss is based on written materials rather than an evidentiary

hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts."  *Love v.*

---

[7] The Individual Defendants, as employees, owed a duty of loyalty to SSB which clearly was breached.  *See Kieburtz & Assocs., Inc. v. Rehn*, 68 Wn. App. 260, 265, 842 P.2d 985 (1992); *Moon v. Phipps*, 67 Wn.2d 948, 954-55, 841 P.2d 794 (1966); *Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wn. App. 242, 251, 274 P.3d 375 (2012).

[8] The complaint makes clear that the primary basis for subject matter jurisdiction arises under 28 U.S.C. § 1331 (federal question), which has no amount in controversy requirement.  *See* Compl., ¶¶ 5; 22-30; 28 U.S.C. § 1836(c) (conferring original jurisdiction to the district courts for claims under the Defend Trade Secrets Act).  Thus, the diversity jurisdiction allegations in the complaint were only alleged to provide an alternative, though unnecessary, basis for subject matter jurisdiction.

[9] There are two species of personal jurisdiction: specific and general. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).   SSB does not contend that Defendants

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 8
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010).  To make a prima facie showing, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant."  *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  "Uncontroverted allegations in the complaint must be taken as true, and conflicts over statements contained in affidavits must be resolved in [plaintiff's] favor."  *Love*, 611 F.3d at 608.[10]

To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in Washington, thereby invoking the benefits and protections of its laws; (2) plaintiff's claims arise out of defendant's Washington-related activities; and (3) the exercise of jurisdiction would be reasonable.  *Easter v. American West Financial*, 381 F.3d 948, 960-61 (9th Cir. 2004); *Augusta Nat'l*, 223 F.3d at 1086.  If the plaintiff is successful at establishing the first two prongs, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable.  *Mountain West*, 2015 WL 4479490, at *4.

a.      *Defendants Purposefully Directed Their Actions at the Forum State.*

The first prong of the test is analyzed under either a "purposeful availment" standard or a "purposeful direction" standard, which are two distinct concepts.  *Washington Shoe Co. v. A–Z Sporting Goods Inc.,* 704 F.3d 668, 672 (9th Cir. 2012).  For claims sounding in tort, such as here, courts generally apply a "purposeful direction" test, looking to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere.  *See Mountain West*, 2015 WL 4479490, at *4.  To establish purposeful direction, the plaintiff must show that the defendant committed an intentional act, expressly aimed at the forum state, causing harm that the

---

are subject to general jurisdiction.  SSB contends only that the Court has specific jurisdiction over Defendants.

[10] The Declaration of Michael Blaine filed by Defendants fails to controvert any facts material to this specific personal jurisdiction analysis, as pleaded by SSB in its complaint.  As such, it is irrelevant to the Court's jurisdictional analysis.

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

defendant knows is likely to be suffered in the forum state.  *Id.* at *5, *citing Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir.2002) (citing *Calder v. Jones*, 465 U.S. 783, 788-89 (1984)).

### i. *Defendants Intentionally Misappropriated SSB's Seattle-based Trade Secrets*

The complaint documents a near year-long campaign by the Defendants to misappropriate SSB's trade secrets in order to start-up their own competing business.  *See* Compl., ¶¶ 16(a)-(c) – 21.  Of particular importance to this analysis is the intentional decision by the Defendants to reach-out into Washington State and download to a thumb-drive SSB's trade secrets that sat on its Seattle, Washington originated computer servers.  *See id.*, ¶ 21.  Through a computer forensic examination, SSB discovered that Defendants accessed SSB's servers over at least a six-month period and downloaded ten folders containing over 1,000 documents, including 67 unique SOP documents and 149 forms used and prepared by SSB.  *See id.*, ¶ 20.  These facts are <u>not</u> controverted by Defendants in their motion.  Importantly, at the time of such conduct, the corporate defendant, Cryobank America, had been formed as a Texas corporation and the Individual Defendants were acting on behalf of their undisclosed principal in misappropriating SSB's trade secrets.  *See id.*, ¶ 16(b).  These factual allegations demonstrate a prima facie case of specific personal jurisdiction over Defendants.

Although the complaint standing alone is sufficient to confer jurisdiction, SSB also has significant evidence establishing Defendants' purposeful conduct directed at SSB to misappropriate its trade secrets and harm SSB.  *See* Declaration of Allison Goodman.[11]  The forensic analysis developed by Ms. Goodman provides compelling evidence that the Defendants repeatedly, and systematically, accessed and downloaded SSB's SOPs and associated forms and other confidential documents for Cryobank's benefit.  The evidence consists of various "artifacts"

---

[11] SSB submits Ms. Goodman's Declaration only in opposition to Defendants' motion to dismiss for personal jurisdiction.  It is not intended to support SSB's arguments in response to Defendants' 12(b)(6) motion.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 10
(CASE NO.  2:17-cv-01487-RAJ)

Summit Law Group pllc
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

of the Individual Defendants' activity left behind on the hard drives of the accessed computers and underlying programs.  In particular, as described in her declaration, Ms. Goodman found (1) "LNK files" showing when specific files were accessed (created by the computer operating system) (Goodman Decl., ¶ 11), (2) "jumplists" showing when specific files were accessed (created by specific applications) (*id.,* ¶¶ 21; 24), and (3) "shellbags" which show when files were copied to/from specific locations (*id.*, ¶¶ 10-12).  Ms. Goodman concludes that SSB's SOP folder (176 subfolders with 1,483 files) was copied onto a thumb drive on May 2, 2017.  *See id.*, ¶ 25, 27.  All such material apparently was then downloaded onto Cryobank's computers.  Ms. Goodman found evidence that SSB's data and trade secrets once resided on Cryobank's computers; however, such information was subsequently deleted by Cryobank sometime between October 10, 2017 and October 17, 2017 – *i.e.*, shortly after SSB served its complaint.  *See id.*, ¶ 31.[12]

Two recent cases from this District, replete with allegations similar to those at hand, further demonstrate that specific jurisdiction over the Defendants is appropriate:  *Microsoft Corp. v. Mountain West Computers, Inc.*, 2015 WL 4479490 and *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184.  Defendants, however, fail to analyze or even discuss either of these cases in their Motion.

In *Mountain West*, Chief Judge Martinez found specific personal jurisdiction existed over a Utah-based information technology provider and its principals for claims of copyright infringement and related intellectual property torts.  *See Mountain West*, 2015 WL 4479490, at *7. The basis for Chief Judge Martinez's finding was the Utah-based Defendant's intentional decision to reach-out, over the internet and phone lines, to Microsoft's servers located in Washington state to wrongfully validate certain Microsoft licensed software.  On this point of purposeful direction and conduct, Chief Judge Martinez found:

---

[12] The complaint in this case was served on Cryobank on October 4, 2017.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 11
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

> Defendants affirmatively contacted Microsoft through internet contact with its servers … to validate the software it was installing. Regardless of whether Defendant knew where Plaintiff's servers were located, Defendants admit they knew Microsoft is located in Washington.  Even though Defendants contacts with Plaintiff were made remotely, they knew Plaintiff to be located in and operating out of the State of Washington.
>
> The allegations in this case are that Defendants accessed Plaintiff's computers servers to unlawfully validate unlicensed software in violation of trademark and copyright laws.  Such allegations, if true, satisfy the "express aiming" element [for specific personal jurisdiction].  The Defendants alleged actions were intentional and directed at Plaintiff. …. If the allegations are true, it was not only foreseeable but certain that their conduct would harm Plaintiff in Washington.

*Id.* at *7.

Defendants argue that their copying of materials from SSB's servers is not purposefully directing activity at Washington.  *See* Motion at 17, ¶ 44.  Yet, the allegations of the complaint, which have not been controverted through affidavit, make clear that Defendants engaged in a concerted effort to misappropriate SSB's SOPs and related materials by accessing SSB's server, located in Seattle.  This is precisely the conduct and allegations found by Chief Judge Martinez to confer specific jurisdiction in *Mountain West*, and thus, the uncontroverted allegations in the Complaint are sufficient to demonstrate that jurisdiction is appropriate.

Similar to *Mountain West*, in *T-Mobile*, the Court found that the Chinese Defendant Huawei-China – despite having no contacts itself with the State of Washington – purposefully directed its actions to Washington.  *T-Mobile*, 115 F. Supp. 3d at 1202.  In so finding, the Court relied on allegations in T-Mobile's complaint that Huawei-China intentionally directed, from afar, certain individuals to misappropriate trade secrets at T-Mobile's Bellevue, Washington offices.  *Id.* at 1202-03.  Like the defendant in *T-Mobile*, Defendants here acted intentionally, from out of State, to misappropriate SSB's trade secret SOPs residing in Seattle.  Here, Cryobank America was first formed by the Individual Defendants.  *See* Compl., ¶¶ 16(a)-(b).  Next, the Individual

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 12
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Defendants engaged in their scheme to misappropriate SSB's trade secrets for their and Cryobank's benefit. *See id.*, ¶ 20. These facts are not controverted by Defendants through affidavit.

Further, in addition to the allegations of misappropriation contained in the Complaint, Defendants brazenly *admit* to copying SSB's SOPs: "[The Defendants] did not spirit out the files, but *simply put them on a flash drive and walked out with them*." *See* Motion at 18, ¶ 51. Such material was then used to compete against SSB, as Defendants have started a business in precisely the same industry as SSB, thereby causing harm to SSB in Seattle, Washington. Nevertheless, Defendants insist they did not direct activity toward SSB in Seattle, Washington.

It cannot seriously be disputed that the Defendants were aware that *Seattle* Sperm Bank was located in Seattle, Washington. Nor can it seriously be disputed that the Individual Defendants were unaware of where SSB's electronically-stored SOPs were developed and housed (*i.e.*, Seattle). In short, Defendants purposefully directed their intentional and wrongful activities at Seattle, Washington to specifically compete against SSB. *See* Compl., ¶ 21. None of these allegations, which are each contained in the complaint and which are material to a specific jurisdiction analysis, have been controverted by Defendants. *See id.*, ¶¶ 5, 8, 20. Defendants have failed to present any evidence which refutes that they purposefully directed conduct toward Seattle, Washington which was intended to harm SSB through wrongful competition. *See T-Mobile*, 115 F. Supp. 3d at 1203.

> ### ii. Defendants' Argument That SSB Has Experienced No Harm is Misplaced.

Although admitting that they took SSB's SOPs (*see* Motion at 18, ¶ 51), Defendants dispute the existence of personal jurisdiction on a separate basis. Defendants contend that SSB has not been harmed in Washington State by Defendants' misappropriation, apparently, because "[SSB] still has those files." *See* Motion at 17-18, ¶¶ 45-46. Defendants' argument grossly misunderstands the crux of a legal action for misappropriation of a trade secret, which has nothing

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 13
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

to do with whether or not the owner of the trade secret continues to have access to its trade secret and everything to do with the *act of* misappropriation:

> the former employee, even in the absence of an enforceable covenant not to compete, remains under a duty not to use or disclose, to the detriment of the former employer, trade secrets acquired in the course of previous employment.  Where the former employees seek to use the trade secrets … in order to obtain a competitive advantage, then competitive activity can … result in an award of damages.

*Ed Nowogroski Ins.*, 137 Wn.2d at 427, 437; *accord* 28 U.S.C. § 1836(b)(1).  No element of an action for misappropriation of a trade secret rises or falls on whether or not the owner of the trade secret continues to have access to its trade secret after Defendant has improperly taken it.  Nor should it.  After all, the purpose of Washington "trade secrets law is to maintain and promote standards of commercial ethics and fair dealing in protecting those secrets."  *Ed Nowogroski Ins.*, 137 Wn.2d at 438.

The harm to SSB is clear:  The extensive thought and time SSB has spent in developing its voluminous and protectable SOPs has been taken without its permission by a business competing in precisely SSB's industry.  Again, these facts go uncontroverted by Defendants.  Unsurprisingly, wrongful disclosure or use of a trade secret is generally presumed to harm a plaintiff where disclosure is even threatened because disclosure "destroys the information's status as a trade secret."  *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919 (D. Nev. 2006) (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984)).  The use or disclosure, as alleged here, allows "competitors to reproduce [the] work without an equivalent investment of time and money." *Id.* (citing *Winston Rs. Corp. v. Minn. Min. & Mfg. Co.*, 350 F.2d 134, 142 (9th Cir. 1965)); *see also Robbins Co. v. JCM Northlink LLC*, NO. C16-646RSL, 2016 WL 4193864, at *3 (W.D. Wash. Aug. 9, 2016) (disclosure of trade secret sufficient to establish irreparable harm for preliminary injunction).  Even disclosure of confidential, non-trade secret information, is similarly recognized as a serious harm.  *See Saini*, 434 F.Supp.2d at 919 (citing *Union Pacific R.R. Co. v. Mower*, 219 F.3d 1069, 1071 n.1 (9th Cir 2000)).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Additionally, Defendants confusingly argue that the Court may not exercise specific personal jurisdiction because some form of standard operating procedures are commercially available at a relatively inexpensive price. *See Motion* at 17-18, ¶ 46. Determination of whether SSB's SOPs are commercially available (they are not), however, is fact intensive, and not proper at the motion to dismiss stage. Defendants do not controvert the complaint's allegation that Defendants copied SSB's SOPs because of their value to Defendants. Rather, Defendant Blaine attaches a hearsay invoice to his declaration as "proof" that SSB's SOPs are not valuable and that there is no harm. *See* Blaine Decl. at Exh. A. It is what Mr. Blaine doesn't say about this invoice, as opposed to the invoice itself, which is relevant. Mr. Blaine doesn't state that Cryobank's SOPs are valued at $14,000. Mr. Blaine doesn't state that the Individual Defendants had the invoicing party create Cryobank America's SOPs. Mr. Blaine's doesn't state that SSB had its SOPs created through this third-party. Nor does Mr. Blaine state exactly how Cryobank America's SOPs were, in fact, created. The hearsay exhibit does not controvert any of the relevant factual allegations of the complaint. The attached invoice was created merely for show; the date listed on the bottom of each page of the invoice is November 8, 2017 – less than a month before the filing of this motion and over two months after Cryobank began to compete against SSB. The invoice has absolutely no relevance to SSB's claims or defenses thereto because the evidence will show Defendants copied SSB's unique SOPs causing harm to SSB in Seattle.

Finally, it is worth noting that while Defendants claim that SSB's SOPs are readily available and inexpensive, SSB's complaint alleges and Defendants admit that they took these same SOPs without permission. As this Court stated in *T-Mobile*, "it is unusual to steal what one can freely obtain in the public domain." *T-Mobile*, 115 F. Supp. 3d at 1192. Thus, a reasonable inference from the complaint's allegations (and Defendants' admission) is that Defendants were stealing trade secret information, necessarily causing significant harm to SSB in Seattle.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 15
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

b.     *SSB's Claims Arise from Defendants' Misappropriation in Washington.*

The Ninth Circuit has adopted a "but for" analysis to determine if a claim arises from a defendant's forum-related conduct.  *See Ballard*, 65 F.3d at 1500 (citing *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990), *reversed on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).  Thus, specific personal jurisdiction is proper here only where "but for" Defendants' activities in Washington, SSB's injuries would not have occurred.

As described in the immediately preceding section, SSB's claims derive from Defendants' intentional conduct of taking SSB's SOPs, stored on a Washington-based server.  There can be no question that "but for" Defendants' actions in taking the SOPs from Washington, SSB's injury (*i.e.*, having its trade secrets stolen by a competitor for use in a competitive and commercial manner) would not have occurred.  Moreover, Defendants have advanced no argument that this prong of the specific jurisdiction test has not been met.

c.     *The Court's Exercise of Jurisdiction is Reasonable.*

Finally, Defendants have the final "burden to show that the exercise of personal jurisdiction over [them] would be unreasonable."  *See id.*  Courts have described this showing as a "heavy burden."  *See Unicru, Inc. v. Brenner*, No. Civ. 04–248–MO, 2004 WL 785276, at *9 (D. Or. Apr. 13, 2004) (citing *Panavison Int'l L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998)).  "[W]here a defendant who purposefully directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Id.*  The Defendants present absolutely no argument or evidence on this important element of the test for specific personal jurisdiction.  Even if argument and evidence were presented, Defendants would not meet the compelling showing test which requires an evaluation of seven factors.  *Id.*  The Individual Defendants chose to be employed by a company based in Seattle, Washington.  The Defendants then embarked on a scheme to misappropriate SSB's trade secrets in order to create a competing business.  This forum is the proper forum for this case, as SSB should have the right to vindicate itself in its home jurisdiction, where the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 16
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

evidence and witnesses who support its case exist.[13]  Accepting the opposite result would lead to unjust consequences such as forcing a plaintiff to chase a defendant to a forum of defendant's choice despite intentional conduct.

Having met each prong of the three-part test for specific jurisdiction, it is clear that Defendants are subject to personal jurisdiction in the Western District of Washington.

2.    *The Amount in Controversy for Diversity Jurisdiction has been Met.*

Although the complaint asserts a separate and independent basis for subject matter jurisdiction – federal question jurisdiction under the Defend Trade Secrets Act – SSB also alleged facts supporting diversity jurisdiction as second, independent basis.

The complaint details the efforts taken by SSB to become an industry leader in its field, and the fact that Defendants misappropriated the very materials upon which SSB differentiates its business – SSB's SOPs.  *See* Compl., ¶¶ 8-10; 20-21.  Based on such allegations, SSB asserted that its damages exceed $75,000.  *See id.*, ¶ 4.

The Defendants fail to identify the fact that this Circuit uses the "legal certainty" test to evaluate whether a complaint meets the amount in controversy element of 28 U.S.C. § 1332.  The standard is an extremely light one which plainly has been met in this case:

> the legal certainty test makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement. Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when

---

[13] It is significant that the only Defendant to submit a declaration is Defendant Blaine.  Although that declaration has no bearing on specific personal jurisdiction, the remaining defendants have failed to present any evidence to controvert the complaint's allegations.  Defendant Kumar, like Defendant Blaine, as owners of Cryobank, intentionally acted on behalf of their principal to harm SSB.  *See* Compl., ¶¶ 5; 16(a)-(c) - 19; 21.  Such agency relationships are relevant to the existence of specific personal jurisdiction.  *See Daimler AG v. Bauman*, 134 S.Ct. 746, 759 fn. 13 (2014) ("A corporation can purposefully avail itself of a forum by directing its agents … to take action there.") (*citation omitted*).

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1     independent facts show that the amount of damages was claimed
      merely to obtain federal court jurisdiction.

2     *See Naffe v. Frey*, 789 F.3d 1030, 1039-40 (9th Cir. 2015) (quoting 14A Wright, Miller, & Cooper,

3     Federal Prac. & Proced., Jurisdiction § 3702, at 48-50 (2d ed. 1985)).  As described previously, the

4     only evidence presented – a hearsay invoice attached to Mr. Blaine's declaration (*see supra*, pg. 15
      (Sec. III.B.1.a.ii)) – is not sufficient to meet the legal certainty test.

5     **C.     Venue is Appropriate.**

6           Defendants seek to transfer venue of this case pursuant to 28 U.S.C. § 1404.  "The

7     defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice

8     of forum."  *Decker Coal Co. v. Commonwealth Ed. Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

      Indeed, "a plaintiff's choice of forum should rarely be disturbed."  *See Center for Bio. Div. v.*

9     *Lubchenco*, 2009 WL 4545169, *4 (N.D. Cal. 2009) (citations omitted).  A plaintiff's choice of

      forum is entitled to "great weight."  *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  As

10    such, Defendants must make a "strong showing" to transfer with respect to eight factors:

11                (1) the location where the relevant agreements were negotiated and
                  executed, (2) the state that is most familiar with the governing law; (3)
12                the plaintiff's choice of forum, (4) the respective parties' contacts with
                  the forum, (5) the contacts relating to the plaintiff's cause of action in
13                the chosen forum; (6) the differences in the cost of litigation in the two
                  forums, (7) the availability of compulsory process to compel
14                attendance of unwilling witnesses, and (8) the ease of access to sources
                  of proof.

15    *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

16          Although Defendants failed to evaluate any of these factors, it is clear that the balance of

      factors, when reviewed, does not strongly favor transfer.  First, the Individual Defendants

17    knowingly entered into employment with a Seattle, Washington based and Washington

18    incorporated company.  Second, this Court would be more familiar with the applicable law –

      Washington – than a court to which this matter is transferred.  Third, SSB chose to file in this

19    Court, as SSB is a Washington resident that was harmed by intentional conduct directed at

20

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 18
(CASE NO.  2:17-cv-01487-RAJ)

1   Washington State.  *See Aweida Arts, Inc. v. Pure Glass Distrib., Inc.*, 157 F.Supp. 3d 929, 939

2   (W.D. Wash. 2015) (transfer from Western District of Washington of plaintiff's trademark

3   infringement action unwarranted as Washington public policy favors protecting the intellectual

4   property rights of Washington residents).  The fourth element – parties contacts with forum –

5   favors Washington, as this case involves Defendants' intentional theft of SSB's intellectual

6   property rights.  *See Seneca Co.'s, Inc. v. Becker*, 134 F.Supp. 3d 1148, 1155-57 (S.D. Iowa 2015)

7   (refusal to grant transfer from Iowa district court to Minnesota district court in trade secret case

8   where former employee of Iowa company misappropriated electronically stored files in Iowa on

9   behalf of future Minnesota based employer).  The fifth element does not militate in either SSB's or

10   Defendants' favor.  The sixth element – cost of litigation – does not militate in favor of either

11   party.  The seventh element – compulsory process – does not militate in favor of transfer as the

12   federal courts have nationwide ability to serve process.  Finally, the eighth element – access to

13   proof - does not favor transfer as the majority of material at issue in this case will be electronically

14   stored.  Therefore, such material can be accessed from computers nationwide.  *See Lax v. Toyota

15   Motor Corp.*, 65 F.Supp. 3d 772, 780 (N.D. Cal. 2014) ("where electronic discovery is the norm …

16   ease of access is neutral….").

17   Transfer is not warranted.

### IV.      CONCLUSION

Defendants have failed to carry the heavy burden associated with a motion to dismiss.  The

complaint clearly describes trade secrets that SSB sought to protect but which, nonetheless, were

misappropriated by the Defendants.  The Defendants even *admit* to such misappropriation.

Jurisdiction also is appropriate in this Court.  Defendants intentionally reached out via computers

into Washington State to misappropriate SSB's trade secrets.  The fact that the Defendants went to

such great lengths to keep their scheme secret from SSB only further supports the fact that they

were well aware that the misappropriation would cause harm to SSB in Seattle, Washington.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 19
(CASE NO.  2:17-cv-01487-RAJ)

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

Finally, this Court should not transfer this lawsuit to another venue. Plaintiff's choice of venue is correct and should be respected.

DATED this 26th day of December, 2017.

SUMMIT LAW GROUP PLLC


By s/ Alexander A. Baehr
  Alexander A. Baehr, WSBA No. 25320
  alexb@summitlaw.com
  Steven O. Fortney, WSBA No. 44704
  stevef@summitlaw.com
  Christopher T. Wion, WSBA No. 33207
  chrisw@summitlaw.com
  315 Fifth Avenue South, Suite 1000
  Seattle, WA  98104-2682
  Telephone:  (206) 676-7000
  Facsimile:  (206) 676-7001

  *Attorneys for Plaintiff Seattle Sperm Bank, LLC*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 20
(CASE NO.  2:17-cv-01487-RAJ)

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

***Co-Counsel for Defendants***
Charles L. Butler, III
Hacker & Willig, Inc., P.S.
520 Pike Street, Suite 2500
Seattle, WA 98101-1385

***Co-Counsel for Defendants***
Warren V. Norred, *Pro Hac Vice*
Norred Law, PLLC
200 E. Abram, Suite 300
Arlington, TX 76010

DATED this 26th day of December, 2017.

*/s/ Katie Angelikis*
Katie Angelikis, Legal Assistant

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, TRANSFER VENUE - 21
(CASE NO. 2:17-cv-01487-RAJ)