UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SEATTLE SPERM BANK, LLC, | |
| Plaintiff, | CASE NO. C17-1487 RAJ |
| v. | ORDER |
| CRYOBANK AMERICA, LLC; MICHAEL BLAINE; and SANJAY KUMAR, | |
| Defendants. | |

## I.  INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss.  Dkt. # 21. Plaintiff Seattle Sperm Bank, LLC opposes the Motion.  Dkt. # 24.  For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Defendants' Motion.

## II.  BACKGROUND

The following is taken from Plaintiff's Complaint, which is assumed to be true for the purposes of this motion to dismiss.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir.

2007); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1107 (9th Cir.2002) (holding that in the context of a Rule 12(b)(2) motion for lack of personal jurisdiction, the court is to take as true the allegations of the non-moving party and resolve all factual disputes in its favor); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (holding that in the context of a 12(b)(3) motion the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party).

Plaintiff is a limited liability company organized under the laws of the state of Washington with its principal place of business in Seattle, Washington. Dkt. # 1 at ¶ 1. Plaintiff also operates in Phoenix, Arizona. *Id*. Defendant Cryobank America, LLC ("Cryobank") is a Texas limited liability company with its principal place of business in Arlington, Texas. *Id*. at ¶ 2. Defendant Michael Blaine and Defendant Sanjay Kumar are residents of Arlington, Texas and former employees of Plaintiff. *Id*. at ¶¶ 3, 4. Plaintiff is a sperm bank that also employs a human-tissue and genetic panel screening process. *Id*. at ¶ 8. As a sperm bank, Plaintiff is required to comply with U.S. Food and Drug Administration ("FDA") rules and regulations for the operation of a sperm donor and cryobank business. *See* 21 C.F.R. § 1271. Pursuant to 21 C.F.R. § 1271.180, a sperm donor business must keep and maintain a list of Standard Operating Procedures ("SOP"). *Id*. at ¶ 9. Plaintiff is required to prepare over 50 SOP's with over 100 regulated forms that must be reviewed and updated on a regular basis. *Id*.

Plaintiff's business operations expanded to Phoenix, Arizona in April of 2015. *Id*. at ¶ 12. Plaintiff hired Defendants Blaine and Kumar to work in their Phoenix, Arizona facility. Blaine was hired in May of 2015 as Lead Biological Analyst and Kumar was hired in June of 2015 as a Biological Analyst. *Id*. at ¶ 13. Blaine and Kumar both signed an acknowledgment that that they received and reviewed Plaintiff's Employee Handbook after they were hired. *Id*. Both Defendants were tasked with managing the Phoenix facility's laboratory, equipment calibration, test result analysis, genetic reviews, and

adherence to FDA guidelines for tissue banking. *Id.* They also had access to Plaintiff's network and file servers. *Id.* at ¶ 14.

On September 19, 2015, Kumar registered for the web domain name: CryobankAmerica.com. *Id.* at ¶ 16. In March of 2016, Kumar and Blaine obtained a business license with the Texas Secretary of State to operate Cryobank. Kumar is identified as "CEO and Co-Owner" and Blaine is identified as "CFO and Co-Owner." *Id.* In December of 2016 and April of 2017, Kumar purchased two cryo-storage tanks from Plaintiff through his father-in-law. *Id.* On April 20, 2017, Blaine provided written notice of resignation to Plaintiff. *Id.* at ¶17. Blaine stated that he was leaving his employment with Plaintiff because his wife was graduating from medical school and received a residency in Texas. *Id.* On that same day, Kumar also provided written notice of resignation to Plaintiff. *Id.* at ¶ 18. Kumar stated that he was resigning because he received "an offer as a manager at a biotech company." *Id.* Following their departure, Plaintiff engaged in an audit of its computer systems and discovered that between December 15, 2016 and May 2, 2017, Kumar and Blaine copied 10 folders onto a removable hard drive. *Id.* at ¶ 20. The folders contained more than 1,500 documents, including 67 SOP documents and 149 forms. *Id.* These materials were housed on a server in Seattle, Washington. *Id.* at ¶ 21.

On October 2, 2017, Plaintiff filed a complaint alleging that Defendants violated the Defend Trade Secrets Act, 18 U.S.C. 1836, *et seq.* ("DTSA") and the Washington Uniform Trade Secrets Act, RCW Ch. 19.108 ("UTSA"). Plaintiff also alleges state law unfair competition and breach of fiduciary duty claims. Dkt. # 1. Defendants filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6). Alternatively, Defendants request transfer of this case to the Northern District of Texas. Dkt. # 21.

### III.   DISCUSSION

#### A.  Personal Jurisdiction

Plaintiff has the burden of establishing personal jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). "It is well established that where the district court relies solely on affidavits and discovery materials, the plaintiff need only establish a *prima facie* case of jurisdiction." *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 587 n.3 (9th Cir. 1993). "Federal courts apply state law to determine the bounds of their jurisdiction over a party." *Williams v. Yamaha Motor Co*., 851 F.3d 1015, 1020 (9th Cir. 2017) (citing Fed. R. Civ. P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines*, 113 Wn. 2d 763, 771, 783 P.2d 78 (1989). The due process clause grants the court jurisdiction over defendants who have "certain minimum contacts . . . such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction can be found on either of two theories: general jurisdiction and specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc*., 223 F.3d 1082, 1086 (9th Cir. 2000). A defendant with "substantial" or "continuous and systematic" contacts with the forum state is subject to general jurisdiction. *Id*. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Axiom Foods, Inc. v. Acerchem Int'l, Inc*., 874 F.3d 1064, 1068 (9th Cir. 2017) (internal quotations omitted). As Plaintiff does not assert that Defendants are subject to general jurisdiction, the Court will consider whether Defendants are subject to specific jurisdiction.

The court applies a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate: (1) the defendant has either purposefully directed his activities toward the forum or purposely availed himself of the privileges of conducting activities in the forum, (2) the plaintiff's claims arise out of the defendant's forum-related activities, and (3) exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Plaintiff bears

the burden of satisfying the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The burden then shifts to defendant to make a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

### a. Purposeful Direction

Where, as here, a case sounds in tort, the Ninth Circuit employs the purposeful direction test. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017). The test derives from the *Calder* effects test, which examines whether the defendant (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Id.* (citing *Calder v. Jones*, 465 U.S. 783 (1984)). It is undisputed that Kumar and Blaine copied documents from Plaintiff's server onto a flash drive and "walked out with them." Dkt. # 50 at ¶ 51. As this is an intentional act, the first prong is satisfied. Plaintiff must next demonstrate that Defendants expressly aimed their intentional acts at the forum. The express aiming requirement is not satisfied by a defendant's knowledge of the plaintiff's forum connections and the foreseeable harm the plaintiff suffered in that forum. *Axiom Foods Inc.*, 874 F.3d at 1069. Instead, the analysis focuses on the defendant's own contacts with the forum. *Id.* at 1070. In this case, Plaintiff alleges that Defendants misappropriated its trade secrets in order to use them in the creation of a competing business in Texas. Although Kumar and Blaine spent a limited amount of time physically in Washington, physical presence is not a jurisdictional prerequisite. Defendants worked for a company whose principal place of business is in Seattle, Washington, a fact that they had knowledge of, as Defendants attest that Blaine interviewed for his job there and Kumar had his initial training there. Dkt. # 22. Kumar and Blaine downloaded the allegedly misappropriated information from servers located in Seattle, Washington. Not only is Plaintiff headquartered in Seattle, but Defendants' actions allegedly caused harm likely to be suffered in Washington. Plaintiff alleges that it operates in Washington and in Arizona, therefore the harm to Plaintiff would likely be

suffered in either of those states. "[I]n appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011) (internal quotations omitted). While Defendants were not in Washington when they allegedly accessed Plaintiff's server, they allegedly misappropriated trade secrets from a Washington company, while knowingly working for a Washington-based company, from a server located in Washington; all of which leads to the assumption that Defendants knew that Plaintiff would likely suffer harm in Washington.

> b. *Arising Out Of*

The Ninth Circuit has adopted a "but for" analysis to determine whether the claims at issue arose from a defendant's forum-related conduct. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Plaintiff's claims arise out of Defendants' actions, specifically, Defendants' alleged copying of over 1,500 documents from Plaintiff's servers in Washington. Defendants do not dispute that documents were copied, but instead argue that it is possible that Defendants could have copied paper versions of the documents on site in Arizona, therefore Plaintiff's claims could have arisen from conduct that did not occur in Washington[1]. Dkt. # 5. This argument is nonsensical and its premise is unsubstantiated. Defendants do not make any allegations to support this possibility nor do they assert that this is what they actually did. Further, they do not deny that they copied the documents at issue.

---

[1] Plaintiff requests that the Court strike the new "facts" and arguments raised in Defendants' Reply. Defendants do not contend that they copied paper versions of the documents, but instead argue that they *could* have. These particular arguments at issue are not new. They were raised in response to arguments made by Plaintiff. The Court declines Plaintiff's request.

2             *c. Exercise of Jurisdiction is Reasonable*

3        As Plaintiff has satisfied the first two prongs required to establish specific

4 jurisdiction, the burden shifts to Defendants to make a "compelling case" that exercise of

5 jurisdiction is not reasonable. *Schwarzenegger*, 374 F.3d at 802. There are seven factors

6 a court must consider when determining whether exercise of jurisdiction is reasonable:

7 "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2)

8 the burden on the defendant of defending in the forum; (3) the extent of conflict with the

9 sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the

10 dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of

11 the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence

12 of an alternative forum." *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107,

13 1112 (9th Cir. 2004).

14        Defendants present no argument regarding this aspect of the specific jurisdiction

15 analysis in their Motion. While Defendants make a cursory argument that exercise of this

16 jurisdiction would be inconvenient in their Reply, "a movant may not raise new facts or

17 arguments in his reply brief." *United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir.

18 1992). Therefore, Defendants' new arguments will not be considered for the purposes of

19 evaluating whether they are subject to specific jurisdiction. Defendants have not made a

20 "compelling case" that this Court's jurisdiction would not be reasonable. Therefore,

21 Plaintiff has met its burden to establish a *prima facie* case that this Court has jurisdiction

22 over Defendants[2].

23  **B. Failure to State a Claim**

24

25       [2] Defendants also argue that Plaintiff's case should be dismissed because Plaintiff fails to

26 plead damages sufficient to establish diversity jurisdiction. As Plaintiff asserts federal question jurisdiction pursuant to its DTSA claim and, as noted below, has sufficiently pled that claim, the

27 Court need not consider that argument here.

Fed. R. Civ. P. 12(b)(6) permits a court to dismiss a complaint for failure to state a claim. The rule requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id*. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### a. Defend Trade Secrets Act Claims

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). A trade secret is defined as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner has taken reasonable measures to keep such information

secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3)(A)(B). "Misappropriation" includes both acquisition and disclosure of trade secrets. 18 U.S.C. §§ 1839(5)(A) & (B). Defendants argue that the Complaint fails to state a DTSA claim because Plaintiff does not allege what "reasonable measures" it took to keep the information at issue secret. Plaintiff alleges that it took "precautions to prevent the misuse of its confidential information, including its SOP's." Dkt. # 1 at ¶ 11. Plaintiff further alleges that all of its employees are required to verify receipt and review of an employee handbook by signature. *Id*. The employee handbook contains the following provisions:

> Confidential and proprietary information concerning Seattle Sperm Bank's business, or clients/customers which is not generally available to the public, must not be disclosed to anyone outside the Company, either during employment or after termination.

> Such confidential and proprietary information includes, but is not limited to, the Company's trade secrets, method of conducting or obtaining business, business or operating plans, finances and financial information . . . technical know-how . . . or any other information or confidences relating to the Company.

> You may not disclose this information or use this confidential information to further your personal interest or that of any person or entity other than the Company.

*Id*. Plaintiff also alleges that access to Plaintiff's network and file servers was limited to certain employees that played "important roles." *Id*. at ¶ 14. The Ninth Circuit has found that "reasonable efforts" include advising employees of the existence of a trade secret, limiting access to a trade secret, and controlling access to the trade secret. *See Buffets,*

*Inc. v. Klinke*, 73 F.3d 965, 969 (9th Cir. 1996). Plaintiff's allegations that it limited full access to the network and file servers to employees with specific roles and asked employees to keep Plaintiff's "trade secrets, method of conducting or obtaining business, business or operating plans" confidential are sufficient to support Plaintiff's contention that it took reasonable measures to keep the information at issue secret.

Plaintiff also alleges Defendants gained a competitive advantage in the industry because the development of the required SOP's represents a large initial investment on the part of a company. Dkt. # 1 at ¶¶ 9, 10. Plaintiff further alleges that its competitors and other new industry entrants would find these SOP's valuable if they were shared. *Id.* As any new company in Plaintiff's industry would need to either obtain or develop its own SOP's in order to be in compliance with federal regulation, a possible shortcut into that process has economic value. Plaintiff has sufficiently alleged that the information at issue derives its economic value from not being generally known to other companies in the industry. Assuming the truth of Plaintiff's factual allegations, Plaintiff sufficiently states a claim pursuant to the DTSA.

### b. *Washington Uniform Trade Secrets Act Claims*

Washington's Uniform Trade Secrets Act ("UTSA"), RCW 19.108.030(1), provides a "complainant may recover damages for the actual loss caused by misappropriation" of trade secrets. UTSA defines "trade secret" as:

> ... information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.18.010(4). As noted above, Plaintiff has sufficiently alleged that the information at issue derives its economic value from not being generally known to others in the industry and that it took reasonable efforts to maintain its secrecy.

However, Defendants argue that under Washington law, an employee that has not signed a non-compete agreement can use "general knowledge, skills, and experience acquired under his former employer" to engage in competitive employment as long as that information is not a trade secret acquired in the course of previous employment, and he is not using that trade secret to the detriment of the former employer. Dkt. # 21 at 11; *see also Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wash. 2d 427, 450, 971 P.2d 936, 948 (1999). Defendants argue that they are not in violation of UTSA because they did not sign a non-compete agreement and are not generally competing against Plaintiff due to their location in Texas. Accepting Defendants' argument is to accept their contention that the information they acquired is not a trade secret. Whether or not Defendants signed a non-compete or are now competing with Plaintiff is irrelevant unless they first establish that threshold issue.

Defendants argue that the information at issue is not a trade secret because it was commercially available from many sources. Defendants submit an exhibit that they contend is a price quote for the value of the standard operating procedures at issue in this case. Dkt. # 22 Ex. A. The document submitted by Defendants is not a document that is central to Plaintiff's claims, the authenticity of which is not in question. Defendants also did not request that the Court take judicial notice of this exhibit. Therefore, the Court will not consider this exhibit for the purposes of this Motion. Whether the SOP's at issue are readily commercially available, or whether Plaintiff invested considerable time, money, and resources in developing SOP's specific to its company, are all questions that would be inappropriate to consider at this stage in these proceedings. Plaintiff need only state a claim to relief that is plausible on its face to defeat a motion to dismiss.

1  Defendants provide no other persuasive argument that Plaintiff fails to state a claim under

2  UTSA[3].

3           *c.  Unfair Competition Claims*

4           Defendants argue that Plaintiff's unfair competition claim should be dismissed as

5  vague because it does not provide the legal basis on which Plaintiff makes its claim.

6  Federal Rule of Civil Procedure 8(a) states that "[a] pleading which sets forth a claim for

7  relief ... shall contain ... a short and plain statement of the claim showing that the pleader

8  is entitled to relief." Fed. R. Civ. P. 8.  To comply with Rule 8, Plaintiffs must plead a

9  short and plain statement of the elements of their claims, identifying the transaction or

10 occurrence giving rise to the claim and the elements of the prima facie case.  *Bautista v.*

11 *Los Angeles Cty*., 216 F.3d 837, 840 (9th Cir. 2000).   The Court finds that Plaintiff's

12 Complaint does not comply with the requirements of Rule 8 with regards to its unfair

13 competition claim.  Plaintiff merely states that Kumar and Blaine breached their fiduciary

14 duties to Plaintiff and "engaged in and continue to engage in unfair competition against

15 Plaintiff."  Plaintiff incorporates all of its prior allegations into its unfair competition

16 claim but does not sufficiently allege how Defendants engaged in or are engaging in

17 "unfair competition."  Plaintiff's Response to Defendants' Motion similarly provides no

18 further explanation, simply stating that Kumar and Blaine accepted salary from Plaintiff

19 while "conspiring to compete".  The Complaint does not provide "fair notice of what . . .

20 the claim is and the ground upon which is rests."  *Johnson v. Riverside Healthcare Sys.,*

21 *LP*, 534 F.3d 1116, 1122 (9th Cir. 2008).  Defendant's Motion is **GRANTED** as to

22 Plaintiff's unfair competition claim.

23

24  _____

25          [3] Defendants contend that Plaintiff's UTSA claim fails because "no improper means were
26  used to acquire the alleged secrets," but provide no details or further explanation to support this
    contention.  The Court cannot presume to know the substance of Defendants' argument where
27  none is provided.  This argument will not be considered for the purposes of this Motion.

**C. Venue**

The district court has discretion to adjudicate motions to transfer according to an individualized case-by-case consideration of convenience and fairness under 28 U.S.C. § 1404(b).  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Section 1404(a) requires that (1) the district to which defendant seeks to have the action transferred is one in which the action might have been brought, and (2) the transfer be for the convenience of the parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a).  The court may weigh the following factors in its determination whether transfer is appropriate in a particular case: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  *Jones*, 211 F.3d at 498–99.  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Defendants argue that venue is improper in Washington because none of the Defendants or Defendants' witnesses reside in Washington and Plaintiff has not established that a substantial part of the alleged events giving rise to this matter occurred in this District.  Defendants argue that this case should be transferred to the Northern District of Texas but provides no argument that this case could have been brought in that District, or that the transfer would be for the convenience of *both* parties and in the interest of justice.  Plaintiff is a resident of Washington and is incorporated under the laws of Washington.  Plaintiff's headquarters are in Seattle, Washington.  The events that gave rise to this matter occurred in part, in Washington.  This Court would also be most familiar with the governing law, as Plaintiff brings most of its claims under Washington

state law. Defendants fail to make the strong showing of inconvenience required to overrule Plaintiff's choice of forum. Therefore, Defendants' Motion to Transfer is **DENIED.**

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Plaintiff's unfair competition claim and **DENIES** Defendants' Motion with respect to Plaintiff's DTSA and UTSA claims. Defendants' Motion to Transfer is **DENIED.** Dkt. # 21.

Dated this 9th day of August, 2018.

The Honorable Richard A. Jones
United States District Judge